## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> TYLER JAMES CAMPBELL, <br><br> Defendant. | Case No. 1:18-cr-00215-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Defendant Tyler James Campbell has filed a Motion for Reduction of Sentence on compassionate release grounds, with exhibits and a supporting Reply. Dkts. 182 to 182-4, 186. The Government opposes the motion. Dkt. 185. For the reasons stated below, the Court requires supplementation of the record before it makes a final ruling.

### BACKGROUND

On July 11, 2018, Campbell and three other individuals were charged with crimes related to the distribution of methamphetamine. Dkt. 1. Count One of the Indictment charged Campbell with Conspiracy to Distribute Methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Counts Three and Four charged Campbell with Distribution of Methamphetamine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

MEMORANDUM DECISION AND ORDER - 1

On July 29, 2019, Campbell entered a plea of guilty to Count One. Dkt. 118. As part of the plea agreement, the Government agreed to dismiss Counts Three and Four. Dkt. 120.

Campbell has a long criminal history. At sentencing, the evidence before the Court showed the Defendant and his coconspirators distributed significant quantities of methamphetamine into the community, with Campbell having a significant leadership role in the conspiracy. He admitted he sold drugs to support his own drug and alcohol addictions. Dkt. 142 at 1.

Campbell now has committed six felonies. He has over 30 adult criminal convictions listed in his PSR, including assault, vehicular manslaughter, theft, burglary, and forgery. Dkt. 141 at 7-15. His total criminal history score is 18. *Id*. at 15. Despite numerous periods of imprisonment, Campbell has continued to participate in methamphetamine use and distribution.

Campbell has been associated with the Aryan Knights gang. He has an "A" and "K" tattooed on his chest/shoulder areas and a swastika and the words, "Strength, Pride, and Purity" tattooed on his stomach area. *See* Dkt. 141-1. At the time of this offense, Campbell claimed there was insufficient evidence of continuing gang affiliation. *See* Dkt. 141, Presentence Report (PSR) at 4-5.

Campbell accepted responsibility for the instant offense and assisted authorities in the investigation or prosecution of his own misconduct by timely

notifying officials of his intent to plead guilty, thus decreasing his offense level by three levels. Dkt. 141 at 7.

On October 23, 2019, the Court sentenced Campbell to 128 months imprisonment, to run concurrently with Idaho convictions for burglary and forgery (Ada County case Nos. CR01-18-8801 and CR01-1812296), unrelated to the federal drug charges. Dkt. 163. Campbell is in Idaho custody.

Campbell states that the Federal Bureau of Prisons (BOP) has not yet calculated his sentence, including pretrial custody credit. It appears he has served approximately 68 months of his sentence (not including any credit for time served), a little less than half of his sentence.[1]

While incarcerated in the Idaho Department of Correction system over the past five years, Campbell has been found guilty of three prison disciplinary offenses: violent assault on June 19, 2020; attempted violent assault on September 2, 2022; and receiving a prohibited tattoo on March 17, 2024. *See* Dkts. 185-1.

Campbell and Kayla Glenn have a son, James Campbell, together. Campbell and Glen have never been married, and, in the past, Kayla was not a key figure in their son's life. When the PSI was completed in 2019, James was 11 years old, and his grandmother, Barbara Campbell, who is Campbell's mother, was his custodian and had plans to adopt him. Dkt. 141 at 18.

---

[1] The parties may include a more precise calculation in their supplemental briefing.

MEMORANDUM DECISION AND ORDER - 3

On May 21, 2023, James had a motocross accident, which left him with a severe traumatic brain injury. On January 15, 2025, at age 16, James was hospitalized at St. Luke's Hospital in Boise, awaiting placement in a long-term care facility, because his grandmother was no longer able to provide care for him. Dkt. 182-1 at 3. The record has not been updated with James's current status, including where he was placed and why, and whether it would make a difference if Campbell is released to help provide care.

Another complicating matter is that Campbell currently is in state custody, and he would need to qualify for parole in that jurisdiction even if this Court granted a compassionate release. The sentence satisfaction date on his remaining three felonies in Ada County is March 11, 2028.[2] Campbell's plan is as follows:

> Campbell has been eligible for parole from his state sentence for some time, but has refused to request parole so he can remain close to his son. If Campbell is discharged from Idaho custody, he will be moved to a Federal Bureau of Prisons facility far away from his son. As the Court knows, there are no BOP facilities in Idaho. If this Court grants Campbell compassionate release, Campbell—with all deliberate speed—will seek parole from his state sentence so he can return to his son.

Dkt. 182 at 8 n.1.

---

[2] *See* https://www.idoc.idaho.gov/content/prisons/resident-client-search/details/78920 (accessed 7/7/2025).

MEMORANDUM DECISION AND ORDER - 4

## LEGAL STANDARD

The Court may not modify a defendant's sentence once imposed, except in limited circumstances. *Dillion v. United States,* 560 U.S. 817, 819 (2010). Congress provided for a "compassionate release" exception in 18 U.S.C. § 3582(c)(1)(A).

To warrant release, the defendant bears the burden of bringing forward facts showing: (1) he exhausted administrative remedies available in the BOP, 18 U.S.C. § 3582(c)(1)(A); (2) his reasons for release are extraordinary and compelling, pursuant to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b); and (3) the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction.

The first requirement is exhaustion of BOP administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Many district courts have concluded that exhaustion is satisfied, or alternatively excused, when a defendant seeking compassionate release is not currently in the custody of the BOP. *United States v. Rubalcava*, 2020 U.S. Dist. LEXIS 164699, at *8 (E.D. Ca. Sept. 8, 2020) (collecting cases).

The second requirement is that the defendant bears the burden of showing that "extraordinary and compelling reasons warrant such a reduction" under U.S.S.G. § 1B1.13(b). The defendant may qualify by showing the defendant's child is incapacitated and the defendant is the only available caregiver for the child. *See* U.S.S.G. § 1B1.13(b)(3)(A).

MEMORANDUM DECISION AND ORDER - 5

Third, the Court must consider the factors in 18 U.S.C. §3553(a) including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## ANALYSIS

### 1. Exhaustion Requirement

Exhaustion of BOP administrative remedies is uncontested. Campbell's counsel wrote a letter to the BOP seeking release. The BOP declined to consider the matter, given that Campbell is in Idaho custody, not federal custody. Dkts. 182, 182-4, 185. This sequence and circumstance satisfy the exhaustion requirement.

### 2. Family Member's Incapacitation

Campbell has shown that his son, James, meets the standard of being incapacitated. James is unable to perform basic life functions such as eating, bathing, and toileting without substantial assistance from a caregiver. For these

reasons and lack of a qualified caregiver, James was hospitalized at the time of the filing of Campbell's compassionate release motion.

Campbell had primary custody of his son before his arrest. Dkt. 182-2 at 2. This seems to have made no difference in Campbell's engagement in criminal activity. James's grandmother, who has been his primary caregiver since Campbell's incarceration in 2019, is now 77 years old and in failing health. Dkt. 182-1 at 2. Barbara is unable to continue providing care due to her advanced age and the fact that James is 6' 2" and weighs 160 pounds, making it too hard for her to move him. Glenn travels back and forth to help James, but she cannot be with him full-time, because she has two younger children at her home, which is 20 minutes away. Dkt. 182-3.

Family members report that, since James's hospitalization in January 2025, his physical and mental state have since rapidly deteriorated. His motivation to engage in physical therapy and rehabilitation is fading, and he has expressed deep loneliness and despair. It is reported that James's "only moments of engagement occur during his brief video calls with his father, Tyler Campbell, who remains the only person who can understand and communicate with him effectively." Dkt. 182 at 2.

Campbell asserts that he desires to physically care for his son and provide emotional support by "restor[ing] the unique and powerful bond between father

and son that has been a source of solace and motivation for James." *Id*. Campbell

must provide current supplemental facts about James, his needs, and Campbell's

abilities to take care of James. It is important to procure a letter from a health care

provider explaining (1) James's current health and mental health status; (2) where

James is residing now and why; (3) whether James can be placed at home in

Tyler's care and does not need long-term care in a 24-hour skilled nursing care or

nursing assistance facility; and (4) what time commitment Campbell would have to

make to be able to adequately care for James at home (including whether home

health care aides may be available to the Campbells). *See, e.g.*, Dkt. 182-1 at 3

(letter from inpatient pediatric social worker). If James must reside at a care

facility and cannot be taken care of at home, Campbell should detail the type of

interactions and the amount of time he would be able to interact with James at the

facility under its rules.

Another factor not addressed in Campbell's Motion is how Campbell would

support himself if he were James's full-time or part-time caregiver. At the time of

Campbell's latest arrest, despite owning and operating a framing company, he

could not support himself and his son, but also sold illegal drugs and committed

theft and forgery on the side. And, even with additional income from crime,

Campbell had no assets and owed $21,563 in debts in collection at the time of

conviction. Dkt. 141 at 19. Campbell may address these financial concerns in his supplementation.

### 3. Section 3553(a) Factors

Compassionate release may be granted when Section 3553(a) factors (1) and (2)(A) through (D) weigh in favor of release. The Court now analyzes Campbell's facts in light of these factors.

Factor (1) is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a). An offense of drug distribution is serious, with the harm from drug use by one individual compounded in many ways across the community, including property crimes committed to obtain funds to purchase more drugs. Campbell's history, habits, and characteristics are troubling. Beyond the drug activity for which he is in federal prison, Campbell is also serving time for burglary and forgery. Those convictions, together with many other crimes listed in the PSI, show that Campbell has not survived by means of legitimate employment, but consistently has transgressed the rights and interests of others to take care of his family's needs.

If Campbell is asserting that he has resolved his drug and alcohol addictions in prison, which he cites as a reason for his excessive need for money, he will have to provide additional evidence supporting that assertion. He asserts he has

completed various rehabilitation programs, but no evidence of the specific programs is in the record. Dkt. 182 at 10.

Campbell's family members and former defense counsel state that Campbell has been involved in James's life as access permits since Campbell's imprisonment. They state that Campbell has forged a relationship with James that is irreplaceable. Campbell's former counsel has seen a change in Campbell, whose desire is to be "a dad to his son." Dkt. 182-2 at 3. Counsel has seen Campbell "rebuild and maintain his relationship with James" and "do[] everything possible to participate in his son's life despite his confinement." *Id*. at 2.

While Campbell has shown that he has established an important relationship with his son that no one else can provide, the record does not reflect any evidence that Campbell will not simply go back to his old way of life and support—taking from others and being active in an illegal drug enterprise. The Court will permit Campbell to provide information about his own assessment of his past inability to provide a regular living for himself and his son and what he has set up on the outside to ensure that he can do so now, including a budget.

Another troubling factor is Campbell's inability to control himself in prison. Two disciplinary offenses for violent assault-related behavior show that Campbell could pick a fight with and injure another member of society. Campbell also could not self-govern enough to avoid making a decision to get an unauthorized tattoo in

MEMORANDUM DECISION AND ORDER - 10

prison in 2024—a date occurring *after* his son's injury, during a time period when Campbell should have been showing all government officials that his release to help his son was warranted. The ability to adhere to society's rules and laws is key to being able to function among law-abiding citizens. Campbell may also address the disciplinary reports in a supplemental declaration.

Factor 2(A) is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. With Campbell having served half of his sentence, the Court concludes that Factor 2(A) is neutral.

Factor 2(B) is the need for the sentence imposed to afford adequate deterrence to criminal conduct. Campbell has now served about half of his sentence while serving two other sentences. Campbell's previous incarcerations seem to have done nothing to deter Campbell from committing further crimes. He asserts that, during the current imprisonment, he has begun to understand the importance of being a parent and forming a regular habit of communicating with his son, who needs his help. He understands that any further criminal activity will require his imprisonment, rendering him unable to participate in the care of his son. The Court concludes that reducing his sentence under these circumstances may deter him from committing further crimes, but that is far from certain. On the other

MEMORANDUM DECISION AND ORDER - 11

hand, five years of imprisonment is sufficient time to deter others from engaging in similar criminal activity.

Factor 2(C) is the need for the sentence imposed to protect the public from further crimes of the defendant. Again, the Court hesitates here, because Campbell has contributed to the destruction of addicted buyers and their families, without any regard for how his personal behavior affects society. He has pointed to nothing in his PSR or briefing that shows he has an awareness of how his drug distribution negatively affects society. Simply caring for his own family is not enough. He may file a supplemental declaration to address this factor.

Factor 2(D) is the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Campbell states he has received adequate rehabilitative services while in prison, he mentors other prisoners, and he has developed a good relationship with prison staff and the warden. Additional support to show what Campbell has done in these areas is required.

## ORDER

**IT IS ORDERED:**

Campbell may provide the Court with the supplemental information set forth above no later than 45 days after entry of this Order. The United States may file a

response within 21 days after Campbell's supplement is filed. The Court will then

decide whether compassionate release should be granted.

DATED: August 2, 2025

B. Lynn Winmill
U.S. District Court Judge