UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYLER JAMES CAMPBELL,<br><br>Defendant. | Case No. 1:18-cr-00215-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Defendant Tyler James Campbell (Campbell) filed a Motion for Reduction of Sentence on compassionate release grounds, with exhibits and a supporting Reply. Dkts. 182 to 182-4, 186. The Government opposed the motion. Dkt. 185. The Court ordered Campbell to provide additional facts to support his Motion. Campbell has filed a Supplement. Dkt. 188 to 188-12. For the reasons stated below, the Court will grant Campbell compassionate release from his federal sentence for the purpose of caring for his incapacitated son. This Order does not address Campbell's current state sentence.

MEMORANDUM DECISION AND ORDER - 1

# BACKGROUND

### 1. Crime and Incarceration

On July 11, 2018, Campbell and three other individuals were charged with crimes related to the distribution of methamphetamine. Dkt. 1. Count One of the Indictment charged Campbell with Conspiracy to Distribute Methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Counts Three and Four charged Campbell with Distribution of Methamphetamine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

On July 29, 2019, Campbell entered a plea of guilty to Count One. Dkt. 118. As part of the plea agreement, the Government agreed to dismiss Counts Three and Four. Dkt. 120.

Campbell has a long criminal history. At sentencing, the evidence before the Court showed the Defendant and his coconspirators distributed significant quantities of methamphetamine into the community, with Campbell having a significant leadership role in the conspiracy. He admitted he sold drugs to support his own drug and alcohol addictions. Dkt. 142 at 1.

Campbell has committed six felonies. He has over 30 adult criminal convictions listed in his PSR, including assault, vehicular manslaughter, theft, burglary, and forgery. Dkt. 141 at 7-15. His total criminal history score is 18. *Id*. at 15.

MEMORANDUM DECISION AND ORDER - 2

Campbell has been associated with the Aryan Knights gang. He has an "A" and "K" tattooed on his chest/shoulder areas and a swastika and the words, "Strength, Pride, and Purity" tattooed on his stomach area. *See* Dkt. 141-1. At the time of this offense, Campbell claimed there was insufficient evidence of continuing gang affiliation. *See* Dkt. 141, Presentence Report (PSR) at 4-5.

Campbell accepted responsibility for the instant offense and assisted authorities in the investigation or prosecution of his own misconduct by timely notifying officials of his intent to plead guilty, thus decreasing his offense level by three levels. Dkt. 141 at 7.

On October 23, 2019, the Court sentenced Campbell to 128 months imprisonment, to run concurrently with Idaho convictions for burglary and forgery (Ada County case Nos. CR01-18-8801 and CR01-1812296), unrelated to the federal drug charges. Dkt. 163. Campbell currently is in Idaho custody.

Campbell states that the Federal Bureau of Prisons (BOP) has not yet calculated his sentence, including pretrial custody credit. It appears he has concurrently served approximately 76 months of his 128-month federal sentence (not including any credit for time served), a little over half of his sentence.

While incarcerated in the Idaho Department of Correction (IDOC) system over the past six years, Campbell has been found guilty of three prison disciplinary

MEMORANDUM DECISION AND ORDER - 3

offenses: violent assault on June 19, 2020; attempted violent assault on September 2, 2022; and receiving a prohibited tattoo on March 17, 2024. *See* Dkts. 185-1.

### 2.  Campbell's Son's Accident and Resulting Disability

Campbell and Kayla Glenn (Glenn) have a son, James Campbell (James), together. Campbell and Glenn have never been married, and, in the past, Kayla was not a key figure in their son's life. When the PSI was completed in 2019, James was 11 years old, and his grandmother, Barbara Campbell (Barbara), who is Campbell's mother, was his custodian and had plans to adopt him. Dkt. 141 at 18.

On May 21, 2023, James had a motocross accident, which left him with a severe traumatic brain injury. On January 15, 2025, at age 16, James was hospitalized at St. Luke's Hospital in Boise, awaiting placement in a long-term care facility, because his grandmother was no longer able to provide care for him. Dkt. 182-1 at 3.

### 3.  Federal Compassionate Release and State Parole

Campbell currently is in state custody. A grant of compassionate release is a pre-requisite to Campbell being able to qualify for state parole. The sentence satisfaction date on his remaining three felonies in Ada County is March 11, 2028.[1] Campbell's plan is as follows:

---

[1] *See* https://www.idoc.idaho.gov/content/prisons/resident-client-search/details/78920 (accessed 7/7/2025).

MEMORANDUM DECISION AND ORDER - 4

> Campbell has been eligible for parole from his state sentence for some time, but has refused to request parole so he can remain close to his son. If Campbell is discharged from Idaho custody, he will be moved to a Federal Bureau of Prisons facility far away from his son. As the Court knows, there are no BOP facilities in Idaho. If this Court grants Campbell compassionate release, Campbell—with all deliberate speed—will seek parole from his state sentence so he can return to his son.

Dkt. 182 at 8 n.1.

## LEGAL STANDARD

The Court may not modify a defendant's sentence once imposed, except in limited circumstances. *Dillion v. United States,* 560 U.S. 817, 819 (2010). Congress provided for a "compassionate release" exception in 18 U.S.C. § 3582(c)(1)(A).

To warrant release, the defendant bears the burden of bringing forward facts showing: (1) he exhausted administrative remedies available in the BOP, 18 U.S.C. § 3582(c)(1)(A); (2) his reasons for release are extraordinary and compelling, pursuant to the Sentencing Commission's policy statement, U.S.S.G. § 1B1.13(b); and (3) the factors in 18 U.S.C. §3553(a) weigh in favor of a sentence reduction.

The first requirement is exhaustion of BOP administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Many district courts have concluded that exhaustion is satisfied, or alternatively excused, when a defendant seeking compassionate release

MEMORANDUM DECISION AND ORDER - 5

is not currently in the custody of the BOP. *United States v. Rubalcava*, 2020 U.S. Dist. LEXIS 164699, at \*8 (E.D. Ca. Sept. 8, 2020) (collecting cases).

The second requirement is that the defendant bears the burden of showing that "extraordinary and compelling reasons warrant such a reduction" under U.S.S.G. § 1B1.13(b). The defendant may qualify by showing the defendant's child is incapacitated and the defendant is the only available caregiver for the child. *See* U.S.S.G. § 1B1.13(b)(3)(A).

Third, the Court must consider the factors in 18 U.S.C. §3553(a) including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

## ANALYSIS

### 1. Exhaustion Requirement

Exhaustion of BOP administrative remedies is uncontested. Campbell's counsel wrote a letter to the BOP seeking release. The BOP declined to consider

MEMORANDUM DECISION AND ORDER - 6

the matter, given that Campbell is in Idaho custody, not federal custody. Dkts. 182, 182-4, 185. This sequence and circumstance satisfy the exhaustion requirement.

### 2. Family Member's Incapacitation

Campbell has shown that his son, James, meets the standard of being incapacitated. James is unable to perform basic life functions such as eating, bathing, and toileting without substantial assistance from a caregiver. For these reasons and lack of a qualified caregiver, James was hospitalized at the time of the filing of Campbell's compassionate release motion.

Campbell had primary custody of son before his arrest. Dkt. 182-2 at 2. This seems to have made no difference in Campbell's engagement in criminal activity. James's grandmother, Barbara, who has been his primary caregiver since Campbell's incarceration in 2019, is now 77 years old and in failing health. Dkt. 182-1 at 2. Barbara is unable to continue providing care due to her advanced age and the fact that James is 6' 2" and weighs 160 pounds, making it too hard for her to move him.

James' mother travels back and forth to help James, but she cannot be with him full-time, because she has two younger children at her home, which is 20 minutes away. Dkt. 182-3.

Family members report that, since James's hospitalization in January 2025, his physical and mental state have since rapidly deteriorated. His motivation to

MEMORANDUM DECISION AND ORDER - 7

engage in physical therapy and rehabilitation is fading, and he has expressed deep loneliness and despair. It is reported that James's "only moments of engagement occur during his brief video calls with his father, Tyler Campbell, who remains the only person who can understand and communicate with him effectively." Dkt. 182 at 2.

Campbell desires to physically care for his son and provide emotional support by "restor[ing] the unique and powerful bond between father and son that has been a source of solace and motivation for James." *Id*.

The Court ordered Campbell to provide current supplemental facts about James, his needs, and Campbell's abilities to take care of James. Campbell was required to procure a letter from a health care provider explaining James's current health and mental health status. Campbell has provided a letter from James' physician, Natasha Erickson, M.D., confirming his profound incapacitation and need for a dedicated caregiver. Despite having completed inpatient rehabilitation, James "continues to demonstrate substantial disability and cognitive impairment." Dkt. 188-1 at 1. He has "persistent profound neurological and functional deficits." *Id*. As a result, James requires "total assistance for all activities of daily living (ADLs)." *Id*. In addition, James has "disinhibited and impulsive behavior" that "[m]ay require behavioral redirection and close supervision." *Id*.

MEMORANDUM DECISION AND ORDER - 8

Campbell was ordered to explain how he would support himself if he were James's full-time or part-time caregiver. James has provided a comprehensive parole plan to be supervised by the IDOC that explains his release and re-entry plan (including housing, family and community support, employment and education, and rehabilitation and counseling, and caregiving responsibilities) (Dkt. 188-2) and a budget and support plan (Dkt. 188-3). James has provided an outline and a letter from Mindy Walton, Campbell's partner and James' primary advocate, outlining her role as a family support person when Campbell is released (Dkt. 188-4, 188-5).

### 3.  Section 3553(a) Factors

Compassionate release may be granted when Section 3553(a) factors (1) and (2)(A) through (D) weigh in favor of release. The Court now analyzes Campbell's facts in light of these factors.

Factor (1) is "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a). An offense of drug distribution is serious, with the harm from drug use by one individual compounded in many ways across the community. The Court required Campbell to provide evidence that he has resolved his drug and alcohol addictions in prison, which he cited as a reason for his excessive need for money prior to his arrest. In his supplement, Petitioner has provided evidence of completion of specific IDOC programs. Dkt. 188-6. He

MEMORANDUM DECISION AND ORDER - 9

has completed construction courses, communication courses, *id.*, and "core required programming for rehabilitation for IDOC (Thinking for a Change and Substance Abuse Treatment)." Dkt 188-7 at 1.

The supplement includes a letter from Valerie Walsh, IDOC Program Manager, who has worked with James over the past several years. She reports that James has "demonstrated personal growth, … avoided negative interactions that could be problematic for [his] future, … been trusted by Education staff to work independently in study hall," and has "proven [himself] to be a dedicated college student and a TA for the college." Dkt. 188-7 at 1. Ms. Walsh cites Campbell's positive attitude,  respectful disposition towards staff, obedience to facility rules, ability get along with peers, compassionate attitude toward and willingness to share his own experiences with the younger population, and "pro-social desires to continue building [his] life in a positive way," as reasons for voicing her support of him. *Id.*

Campbell has also provided a letter from Stacey LaRoe, the Program Manager at St. Vincent de Paul, who specializes in reentry career development and navigation. Dkt. 188-8. She writes, "It is without hesitation that I move to ask for Campbell's compassionate release. His impact on the community is not something insignificant." *Id.* at 1. She lists her reasons. *Id.* She affirms that her "team plans to stick by him throughout the next phases" for additional community support. *Id.*

MEMORANDUM DECISION AND ORDER - 10

The supplement also contains a letter from Ms. Willey, Director of Adult and Corrections Education at Lewis-Clark State College, stating:

> Beyond his academic achievements, I personally selected Tyler to assist me in my work because of the qualities that immediately stood out: his willingness to help others, his sincerity, and his steady reliability. He has proven himself to be trustworthy, responsible, and thoughtful in his interactions. Mr. Campbell takes initiative when tasks need to be completed, shows patience and empathy when working with peers, and demonstrates a consistent ability to handle responsibility with maturity.
>
> What impressed me most is his ability to not only focus on his own goals but also to elevate those around him. His conduct in class and his support of others reflect his character and his commitment to making positive contributions.

Dkt. 188-9.

Joel F. Weaver, Pocatello Corrections Program Coordinator for Lewis-Clark State College, has similar positive observations of Campbell's rehabilitative progress, "strongly support[s]" Tyer's compassionate release, and will continue to support him toward completion of his college degree. Dkt. 188-10.

This new information and the supportive recommendations from multiple professionals who have worked directly with Campbell in his rehabilitation satisfy the Court's previously stated concerns about Campbell prior disciplinary offenses in prison.

MEMORANDUM DECISION AND ORDER - 11

Campbell's family members and former defense counsel state that Campbell has been involved in James's life as access permits since Campbell's imprisonment. They state that Campbell has forged a relationship with James that is irreplaceable. Campbell's former counsel has seen a change in Campbell, whose desire is to be "a dad to his son." Dkt. 182-2 at 3. Counsel has seen Campbell "rebuild and maintain his relationship with James" and "do[] everything possible to participate in his son's life despite his confinement." *Id*. at 2.

Dr. Erickson dicloses Campbell's continuing behavioral problems in institutional care. Dkt. 188-1 at 1. It appears that Campbell may be able to be a positive influence with this important aspect of James' care and rehabilitation.

Factor 2(A) is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. With Campbell having served a little over half of his sentence, the Court concludes that Factor 2(A) is neutral.

Factor 2(B) is the need for the sentence imposed to afford adequate deterrence to criminal conduct. Campbell has now served a little over half of his sentence while serving two other sentences. The Court observed that Campbell's previous incarcerations did little to deter Campbell from committing further crimes. The Court required additional facts.

The supplement shows that Campbell's present incarceration—combined with his desire to care for his son, his prison rehabilitation, and his family support—has made a difference this time. In addition, he understands that any further criminal activity will require his imprisonment, rendering him unable to participate in the care of his son. The Court concludes that reducing his sentence under these circumstances would sufficiently deter him from committing further crimes. Six years of imprisonment is also sufficient time to deter others from engaging in similar criminal activity.

Factor 2(C) is the need for the sentence imposed to protect the public from further crimes of the defendant. Again, the Court required more information, noting that Campbell has contributed to the destruction of addicted buyers and their families, without any regard for how his personal behavior affects society. He had pointed to nothing in his PSR or briefing that shows he has an awareness of how his drug distribution negatively affects society. Simply caring for his own family is not enough.

Campbell included his own letter addressing the Court's concerns:

> My past mistakes are mine to carry, and I live every day with the knowledge of how my choices hurt not only myself but also my community. I regret the pain I caused, and I know I cannot undo it. What I can do is take full responsibility, continue the work I've begun to change, and devote myself to being a better man — for my son, and for the people around me.

MEMORANDUM DECISION AND ORDER - 13

> During my time incarcerated, I have worked hard to grow. I have completed programs and taken every opportunity available to rebuild myself into someone who acts with honesty and responsibility. I want my life to stand for something different now — to be a father who shows up for his son, a man who works honestly, and a person who gives back instead of causing harm.

Dkt. 188-12 at 1.

This letter shows that Campbell has developed an awareness of how his crimes affected others outside his family and that he has committed to giving, not taking, from the community. The statements of the professionals above also show that he has made strides in aiding others, including helping his peers in rehabilitative and educational programs. This factor weighs in favor of release.

Factor 2(D) is the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Campbell has provided sufficient supplemental information to show that he has completed helpful training classes and that the mentors and services provided to him in prison will continue to support him upon release to the community.

For all of the foregoing reasons, the Court will grant the Motion for Compassionate Release.

MEMORANDUM DECISION AND ORDER - 14

## ORDER

**IT IS ORDERED:**

1. Defendant Tyler James Campbell's Motion for Compassionate Release (Dkt. 182) is **GRANTED**.
2. Campbell's term of imprisonment is reduced to time served.
3. As part of his punishment, Campbell must serve his original 5-year term of supervised release in a manner the United States Probation Services sees fit, including coordination with IDOC parole officials, if necessary.
4. The Court does not order release, because Campbell is currently serving Idaho state sentences. This Order is intended to be used in conjunction with Campbell's request for parole to the IDOC on his Idaho convictions but does not override or alter his IDOC sentences.
5. Campbell's counsel shall coordinate any additional details with the IDOC, the BOP, and the United States Probation Services.
6. All conditions of supervised release from the Judgment (Dkt. 163) shall remain in effect.

DATED: May 8, 2026

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15